Mr. Justice Huger
delivered the opinion of the court:
Before I proceed to the consideration of the principal question made in this case, I must observe that this suit was not brought to recover the fee allowed to the measurer, but for the penally imposed for selling coal without having bad it measured, asrequired by the ordinance. If the only objection to the ordinance be the supposed unconstitutionality of the fee, the city council had the power to require the measurement of the coal in the manner prescribed, and the defendant was so far bound to comply. He might afterwards, if he pleased, have contested the payment of the fee. The great object of the ordinance was the mea'surement of the coal, not the payment of the fee. It would. *497 be going great lengths to declare ?n act void, only bcev.ise an unimportant provision of it was unconstitutional. Vr.is court lias frequently de'dtíed differently. Were I, therefore, satisfied that the fee was unconstitutional, I should i.ot conclude that the suit for the penalty could not be supported, unless the power to require the measurement of oals be also unconstitutional. The constitution no which directly prohibits the mensuren ent of coa1 by a stale ; if, therefore, the exerci.-.e of this power by .«trite be net incompatible with soeu-; power given to congress, it must he constitutional. The only power with which it can he supposed to conflict, is Che power of regufeting commerce. The words of the constitution are, “ congress shall have power to regulate commerce v ith foreign nations and among the severa! states.” Here no’power is, given to regulate commerce between citizens and residents of the same state. The ordinance »o where prescribes regulations for any commerce which may he carried on between this city and a foreign cation, or with ¡mother stale. It is expressly limited to ■ ub; ns end cs dents of the city. It does not therefore inter,ere with the power oft ,mr. r< .-.i in this respect. If the city has the power .oí regu ating commerce between its citizens, it must have the power of enforcing those regulations. Had the ordinance, therefore, not prescribed the fee to which the inspector was entitled, it would have been constitutional, and if that part which does prescribe the fee be unconstitutional, the other provisions are constitutional and binding, and the decree ought to have been for the plaintiff, Í shall now enquire, if the fee prescribed be inconsistent with the constitution. The 10th section of the 1st article, in plain terms, prohibits a state from laying any impost, or duty on imports or exports, except such as are necessary for executing inspection laws. Here two questions arise :
1st. If the fee in question be a duty or impost within the meaning of the constitution, was not the ordinance, so far as the coals arc concerned, an inspection law ?
bdly. If the ordinance he not an inspection law, is it *498 therefore unconstitutional ? The constitution no where-'declares what is an inspection law ; we are therefore left to its general signification for the meaning of the term. — •' Its literal signification would include imports as well as exports. If articles exported are inspected to enhance their value and facilitate their sale abroad, articles imported may he inspected to fix their value and prevent imposition at home; and in a commercial city, where so many of the articles imported are again exported, it would apnear as important to inspect such as are proper ior inspection when imported as wh.en they are the growth or manufacture of the state. When the articles imported h-we been already inspected at the place of shipment, a further inspection may be unnecessary ; and the reason I apprehend why the inspection of imports is not more generally provided for, is the now' general practice in the different states of subjecting to inspection most articles of domestic growth and manufacture. This practice, though very much increased in the last five and twenty years, is not yet universal. In the very ordinance under consideration, provision has been made for the inspection of beef and pork imported into this- city, which has not been before inspected. That articles imported may be subjected to inspection laws, appears not only from the policy of trade and the ordinance in question, but from the very words of the constitution itself. The 2nd article of the-10th section declares, that “ no state shall, without the consent of Congress, lay any impost or duty on imports or exports, except what may be absolutely necessary for executing its inspection laws “ and the nett produce of all duties and imposts laid by any state on imports or exports, shall be for the use of the treasui’y of the United States,55 Here, no state is permitted to lay any impost or duty, but to enforce its inspection laws; and the impost or duty laid on imports as well as exports, is to he paid into the treasury of the United States. From this phraseology, it appears evident that imposts as well as exports, may be inspected within the meaning of the Constitution." *499 -If-any articles imported can be inspected, I cannot undertake to decide that coals ought not. Quantity as well as quality is an object of inspection, and it may contribute as much to the convenience of the citizens of this place, where coals are used very generally for fuel, to have an inspection of them, as of beef, or pork, or bread, or any other article. On this point', the ordinance itself is very conclusive ; it was passed by those who were besl acquainted with the wants of the community, and who were elected by the people for such purposes ; and it is to be observed that their judgments could not have been misled by their cupidity, for no revenue was derived from inspection. I cannot however deem it material to this case, that the ordinance in question should be regarded as an inspection law. Although a state cannot lay a duty or impost on an import or export, it has not yet been denied that it can tax those living within its jurisdiction, nor has it been supposed unconstitulional in a state to punish offences against its laws. The ordinance in question does not even pretend to tax the transfer of coal from hand to hand., it only requires that when transferred, it should be measured in a particular way. The fee allowed the measurer is not a tax; or duty, or impost, it is but a small remuneration for la-' hour performed. Wood, lumber, and many other articles are subjected to the same regulation. Is it not as much .a duty on exports to require that wood and lumber should be measured, as it is an impost on imports to require coals to be measured? Taxes, duties, imposts, and excises, are words not without meaning ; it is to be regretted, however, that when used in the constitution to give or take away power, they were not more clearly defined. Congress have power to lay and collect taxes, duties, imposts and excises by the 5th section. By the second article of the 1.0th section, the states are prohibited laying on ’ any imposts or duty on imports or exports ; no where, however, has the power to lay and collect taxes and excises been taken from the states ; but the general government alone can lay and collect duties and imposts upon imports, *500 By the 5ih article of the Sth section, the general r/overnment is prohibited from laying a tax or duly upon exports. From these and other limitations in the constitution, it appears that the state governments are not entrusted with die power of doing any act to afreet the intercourse between the different states and between either of them and a foreign country. Had they been permitted to interfere in such matters, confusion and war must have been the result, and all intercourse with foreign nations would have been precarious, if not entirely destroyed. We should not have been as one nation to foreigners, but as many, and the happiness of the whole would have been prostrated at the feei of a capricious and imbecile siate sovereignty. It was, therefore, wisely left exclusive!}' to the general government to lay and collect, duties md imposts on imports from foreign countries. But no more power is hero given than is necessary to the attainment of the object in view. To tax or lay a duty on exports is not given, because it was not necessary to our intercourse with foreign nations, and might and probably would lead to sectional preferences, and excite local jealousies. Neither can a duty or impost be laid by the general government on goods imported from another state. This power was not necessary to the attainment of any object for whicht.be general government, was formed, and would liare been liable to the same abuses with the power of laying, duties and exports. The general government has been.} entrusted with such powers as were necessary to the managementof our exterior or international concerns; and with some others essential to general or notional convenience, as to coin money, regulate the value thereof and of foreign coin, and fix the standard of weights and measures ; to establish post offices; to promote the progress of science by securing to authors and inventors the exclusive right to their writings and discoveries, &c. &c. all which powers would have been worse than useless in the possession of the states. Independent, however, of these gi-eat objects, there are very many others of a local nature, in which the people could not but be extremely interested. *501 For the attainment of these, the state governments were established and so constituted as to answer the purposes for which they were intended. It was not, however, to be expected that in apportioning the sovereign power of the nation between these different agents, the general and state governments, that it could be so exactly decided, and each part so distinctly defined a-'- to preclude the possibility, or even probability of their occasionally interfering. Among the exact sciences, politicks cannot be ranked. It. w;„s impossible not io give to each to enable it to perform its proper functions, powers which were required by the other. The general government, in pursuing its legitimate course, will sometimes be in collision with the state governments, when pursuing theirs. It is certainly in the power of each, very materially, to advance or retard the operations of the other ; and as the constitution itself was die result of conciliation and compromise^ so in the same spirit ought-it to be administered. Both governments are the agents of the same people, who will take care that their interests are not sacrificed at Washington or Columbia. As the general government has charge of our general and international interests, and the state governments of our local and social interests, the constitution must be so construed as to give to each the power of performing its appropriate duties. That they have an indirect bearing upon each other, and may sometimes interfere, can be no objection to the exercise of a power by either, though neither can have a power directly to destroy what the other has a power to create. Each may indirectly interfere with the other when both arc acting within their acknowledged limits. Both for example may levy a land tax. In doing so, however, contemporaneously, they indirectly interfere with each other. In this case, they exercise an identical concurrent power, hut this may occur when exercising powers not identical.— The general'government, for example, lias established a. bank ; the states can tax income, and include therein the dividends of theJJnitcd States’ Bank. A tax on income *502 would thus, indirect^, interfere with the power of the.. general government 10 establish a bank. Indeed, all the.; powers retained by the states for internal purposes, may, in their operation,' indirectly affect their exterior relations.1 To the harbour-master’s department, vessels foreign as well as our own, are subjected, and for his interference, a fee is charged and paid by all vessels. Pilotage is under the control of the state governments, and yet both may be so managed as to interfere very much with our foreign as. well as coasting vessels. The state has power to regulate contracts, and in so doing, may affect, very materially, .-our commercial intercourse with the other states and with ■ foreign countries. A watch which is imported, and pays a duty to the general government, may be taxed bj? the state when here, and yet the tax laid may be so high as to prevent, in a great degree, the importation of watches. — • All sumptuary laws, as well as all regulations with resA jpee.t to our markets, interfere indirectly with foreign com-j merce, and commerce between the states. Our quarantine . laws, our vendue taxes, and piany others of long cohtinuanee, do so likewise. To assume then as a position that any act is unconstitutional, which may indirectly interfere with the exercise of some power confessedly granted = to Congress, would be to annihilate the state governments ' altogether. But that such was not the intention of the - people when they adopted the constitution, or of the con- ! vention when they formed it, I think cannot be doubted. Such a construction is not only inconsistent with the avowed object of the constitution, but if adopted, must - lead to the destruction of the government itself, for it does • not follow, because the states do not possess certain pow- ' ers, that the general government does. If, therefore, all those powers not given to Congress, which, when used by the states, would indirectly interfere with the powers given to Congress, are not in the states, they can be exercised by no one ; and as this class of powers is large, and essential to our local interests, we should be without a government in so many essential respects as would rendernc *503 eessary an appeal to first principles, and to the legitimate source of aii power. Although I must conclude, that the possible remote interference of a power exercised by a state, with a power vested in Congress, does not make it-unconstitutional, I would not be understood as contending for a power on the part of a state to control the exercise of power by the g;eneral government. If it appear from the act of a state that the object is to counteract, (or that it really does,) power constitutionally vested in Congress, the act is void ; for a state government (no more than any other agent) will not be permitted to accomplish indirectly what it is not permitted to do directly. In other words, it cannot use power under the cover of false pretences. Sic viere tvo vt non alienvm ¿sidas, is as true with regard to states as to individuals. The power given to each must be so used as to interfere as little as possible with the powers given to the others. I conclude then that the possible indirect interference with commerce, which the fee allowed to the measurer may producá, as well as the measurement itself, is no ground for declaring the ordinance unconstitutional. I am of opinion, therefore, that the decision of the City Court ought to be reversed.
Toomer, for the motion.
Prioleau, contra.
Justices Johnson, Nott and Richardson, concurred.
Gantt, Justice, dissented.